UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMAICA JOHNSON,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )         Case No. 4:24-cv-00827-SRC
                                   )
THE HERTZ CORPORATION and          )
CHRISTOPHER BROOKS,                )
                                   )
        Defendants.                )

## Memorandum and Order

In 2017, Missouri enacted a new law providing exclusive remedies for claims for damages or injury arising out of an employment relationship. The Missouri appellate courts have not had occasion to determine the scope and contours of that law. This case presents novel questions of interpretation of that law, particularly as to the allegedly fraudulently joined defendant. That presence of that defendant destroys diversity, and this Court accordingly lacks subject-matter jurisdiction. The Court remands the case back to state court to wrestle with the novel issues of state law at hand.

## I.      Background

Jamaica Johnson filed this case in state court, and Hertz removed it to this Court. Doc. 1. Johnson then filed an amended complaint. Doc. 22-3. Because Johnson voluntarily filed her amended complaint, the Court examines the amended complaint to resolve questions of subject-matter jurisdiction. *See Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922–24 (8th Cir. 2023), *cert. granted*, 144 S. Ct. 1455 (2024). Johnson's amended complaint alleges the following.

1

From May 11, 2022, to June 22, 2022, Johnson worked for Hertz.  Doc. 22-3 at ¶ 13. Hertz had hired Johnson to work in its Clayton, Missouri office as an "Automotive Detailer."  *Id.* at ¶ 14.  In that position, Johnson had to prepare, transport, inspect, and refuel cars.  *See id.* at ¶ 15.  Johnson describes herself as "a team-player who strived to avoid causing problems and to get along with everyone."  *Id.* at ¶ 19.  When she began working for Hertz, for example, Johnson took "several cases of water and snacks for her co-workers."  *Id.*

Christopher Brooks, one of Hertz's managers, supervised Johnson.  *Id.* at ¶ 21.  Three days after Johnson began working for Hertz, Brooks "instructed Johnson to meet him after work at a gas station" because "he wanted to help Johnson get water/snacks to bring for her co-workers."  *Id.* at ¶¶ 24–25.  "Johnson complied with Brooks'[s] instruction."  *Id.* at ¶ 26.

Johnson and Brooks then entered the gas station and made some purchases:  Johnson bought a Red Bull for herself and water and snacks for her co-workers, and Brooks bought fried chicken.  *Id.* at ¶ 27.  When Johnson exited the store, Brooks walked behind her.  *Id.* at ¶ 28. "Without warning or invitation, Brooks reached out and firmly grabbed Johnson's buttocks."  *Id.* at ¶ 29.  "Johnson immediately raised her hands (in a 'stop' gesture) and said, 'Don't do me like that.'"  *Id.* at ¶ 30.  "Brooks took a step back and apologized," and "Johnson demanded that Brooks refrain from touching her in the future."  *Id.*  Brooks later sent Johnson a text apologizing for "grabbing [her] booty" and saying he did not "want [her] to feel like [he] disrespected [her]." *Id.* at ¶ 31.

Two days later, Brooks texted Johnson a picture of his penis, which Johnson had not asked for and considered unwelcome.  *Id.* at ¶ 32.  A few days later, on May 19, 2022, Johnson asked Terrell Lee—a Hertz employee to whom Johnson directly reported—if Johnson could

transfer to a facility that Brooks did not travel to and from often.  *Id.* at ¶¶ 16, 33.  Lee denied Johnson's request.  *Id.* at ¶ 33.

On June 1, 2022, Brooks and his brother went to Hertz's Clayton office so that they could transport cars from that facility to a different one.  *Id.* at ¶¶ 34–35.  Brooks asked Johnson to go to the garage to help Brooks locate the cars, and Johnson complied.  *Id.* at ¶ 35.  Johnson directed Brooks and his brother to the cars and then began to leave the garage.  *Id.* at ¶ 36.  Before she could leave, Brooks slapped Johnson's buttocks.  *Id.*  "Johnson turned and yelled," "Why you think you can play me like that? . . . Stop foolin [sic]."  *Id.*  Brooks responded, "I was just playing."  *Id.*

Five days later, Hertz transferred Johnson to its Washington Avenue office, an office in which Brooks regularly worked as the store manager.  *Id.* at ¶ 37.  That office also had a "Branch Manager Trainee, TaShera Chairman Driver."  *Id.* at ¶ 38.  As Johnson's superior, Driver had employment authority over her.  *Id.* at ¶ 39.

Johnson and Driver "quickly developed a friendship."  *Id.* at ¶ 40.  Johnson told Driver "about Brooks'[s] sexual harassment, including the picture and the multiple occasions on which he slapped and/or grabbed her buttocks."  *Id.* at ¶ 41.  "Johnson also complained" to Driver that Hertz had not properly paid her wages because Brooks had not accurately recorded Johnson's hours.  *Id.* at ¶ 42.  "Johnson complained to numerous persons about Hertz['s] improper timekeeping and pay practices."  *Id.* at ¶ 42(d).

On June 21, 2022, Johnson overheard a phone call between Driver and Brooks's brother.  *Id.* at ¶¶ 45, 49.  During that call, Driver "exclaim[ed] that Johnson wasn't working hard, that Johnson was a "'b*tch', [sic] that 'Tonie says if Johnson isn't doing anything she should be clocked out and sent home', [sic] and Johnson should be fired."  *Id.* at ¶ 50.  Johnson then called

3

Hertz's general manager to complain about Driver's conduct. *Id.* at ¶ 51. Johnson told the general manager that she believed that "Brooks and [Driver] were in cahoots or conspiring to get her fired." *Id.* But the general manager "did not address Johnson's complaints." *Id.* Instead, "he said he would call her back." *Id.* Later that day, around 4:45 p.m., the general manager "called Johnson back and told her that she was being suspended for threatening co-workers and bringing a gun to work." *Id.* at ¶ 53. Hertz allowed Johnson to finish her shift that day. *Id.* at ¶ 54.

After Johnson finished her shift but before she left, Brooks entered the office. *Id.* at ¶ 55. Brooks told Johnson that he did not know that she was being suspended. *Id.* He then processed paperwork relating to Johnson returning a car that she had rented and relating to a new car that Johnson was going to rent. *Id.* at ¶ 56. After Johnson received the keys for the new rental car, the police arrived. *Id.* at ¶ 57. The police talked to Johnson and others, and they patted Johnson down. *Id.* at ¶¶ 59–60. They did not find a weapon on Johnson's body or arrest anyone. *Id.* Johnson then left the Washington Avenue office without incident. *Id.* at ¶ 61. Johnson claims that, throughout the events described above, "Brooks acted within the scope of his employment or, alternatively, Brooks acted in his individual capacity." *Id.* at ¶ 74.

Hertz terminated Johnson on June 22, 2022, "for 'disrespectful and threatening behavior towards [her] co-workers and managers." *Id.* at ¶ 62. Two days later, Driver filed a petition for an order of protection, claiming that Johnson caused or attempted to cause Driver physical harm. *Id.* at ¶ 63. A state court held a hearing regarding the petition and then denied it. *Id.* at ¶ 64.

Almost two years later, Johnson filed this case in state court, doc. 6, and Hertz removed it to this Court, doc. 1. Johnson claims that Hertz violated the Missouri Human Rights Act, the Missouri Minimum Wage Law, and the Missouri Whistleblower Protection Act. Doc. 22-3 at

¶¶ 80–117.  She alternatively claims that Brooks assaulted and battered her.  *Id.* at ¶¶ 118–24.

Johnson now moves to remand this case to state court, claiming that Hertz improperly removed it

based on Johnson's alleged fraudulent joinder of Brooks.  Docs. 23–24, 29.

## II.    Standard

A defendant may remove to federal court any state-court civil action over which the

federal court could exercise original jurisdiction, 28 U.S.C. § 1441(a), including "all civil actions

where the matter in controversy exceeds" $75,000, exclusive of interest and costs, and is

between "citizens of different States," 28 U.S.C. § 1332(a)(1).  A "plaintiff cannot defeat a

defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection

with the controversy.'"  *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (first

quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914); and then citing

*Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007)).

To prove fraudulent joinder, a defendant must show that the plaintiff's claim against the

relevant defendant "has 'no reasonable basis in fact and law.'"  *Id.* at 977 (quoting *Filla v.

Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).  In other words, "if it is *clear* under

governing state law that the complaint does not state a cause of action against the non-diverse

defendant, the joinder is fraudulent."  *Id.* at 980 (quoting *Filla*, 336 F.3d at 810).  On the other

hand, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the

state law might impose liability based upon the facts involved.'"  *Id.* (footnote omitted) (quoting

*Filla*, 336 F.3d at 811).

This standard "require[s] the defendant to do more than merely prove that the plaintiff's

claim should be dismissed pursuant to a Rule 12(b)(6) motion."  *Id*. (footnote omitted) (citation

omitted).  "If there is a 'colorable' cause of action—that is, if the state law *might* impose liability

on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Filla*, 336 F.3d at 810 (citation omitted). The Court resolves "all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," *id.* at 811 (citing *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 357 (5th Cir. 1999)), and if the sufficiency of the complaint is questionable, the "better practice" is "to remand the case and leave the question for the state courts," *id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

## III. Discussion

The parties agree that Johnson and Hertz are citizens of different states and that the amount in controversy exceeds $75,000 exclusive of interest and costs. Doc. 1 at ¶¶ 10–15, 28–44; doc. 23 (failing to dispute Hertz's citizenship and failing to dispute the amount in controversy). Accordingly, if Johnson fraudulently joined Brooks, as Hertz asserts, the Court has subject-matter jurisdiction under section 1332(a)(1), and the Court must dismiss Johnson's claims against Brooks. *See Johnson v. Midwest Division - RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023). But if the Court concludes that fraudulent joinder did not occur, the Court must remand this case to state court for lack of subject-matter jurisdiction because Brooks is a citizen of the same state (Missouri) as Johnson. Doc. 22-3 at ¶¶ 1, 4; 28 U.S.C. § 1332(a)(1); 28 U.S.C. § 1447(c).

Hertz believes that Johnson fraudulently joined Brooks. Doc. 1. In its view, no reasonable basis exists to conclude that Missouri might impose liability on Brooks because the Missouri Human Rights Act preempts Johnson's assault and battery claims against Brooks. *See id.*; doc. 26; *Filla*, 336 F.3d at 810. Johnson, on the other hand, argues that the Missouri Human Rights Act does not preempt her assault and battery claims because (1) she pleaded "that, in the alternative, her claims against Brooks occurred outside of the scope of her employment

6

relationship with Brooks," doc. 24 at 6,[1] and (2) the act cannot preempt these claims because it does not "provide an equal or greater remedy to that which is provided by common law," *id.* at 4–5, and it fails to provide a means to sue an individual like Brooks, *id.* at 5–6.

> The Missouri Human Rights Act states:
>
> It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation:
>
>> (1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;
>>
>> (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter;
>>
>> (3) For the state or any political subdivision of this state to discriminate on the basis of race, color, religion, national origin, sex, ancestry, age, as it relates to employment, disability, or familial status as it relates to housing; or
>>
>> (4) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.

Mo. Rev. Stat. § 213.070.1.  In 2017, Missouri made several amendments to this statute and the applicable definitions, Missouri Revised Statute § 213.010.  For example, Missouri made section 213.070, and two other statutes, "the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship."  Mo. Rev. Stat. § 213.070.2.  In other words, section 213.070.2 preempts any and all claims for injury or damages that arise out of an employment relationship.

Thus, the fraudulent-joinder analysis raises the question of whether "there is arguably a reasonable basis for predicting that" section 213.070.2 does *not* preempt Johnson's assault and

---

[1] The Court cites to page numbers as assigned by CM/ECF.

battery claims against Brooks, an individual defendant whom Hertz had employed when these events occurred. *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 811). The Court finds that a reasonable basis does exist.

The Missouri Humans Right Act does not define any of the operative terms that make up the exclusive-remedy provision. *See* Mo. Rev. Stat. § 213.010. And neither party has identified any caselaw that interprets or applies it. *See* docs. 23–24, 26, 29. Nor has the Court, in its independent research, found any. The absence of guidance from Missouri state courts leaves the Court with several lingering questions about the scope of the exclusive-remedy provision and how it applies here.

First, Johnson premises her assault and battery claims, in part, on facts that occurred when Johnson and Brooks were away from Hertz's offices. For example, Johnson claims that Brooks, her supervisor, "instructed" her to meet him at a gas station after work to pick up snacks for her coworkers and that she complied. Doc. 22-3 at ¶¶ 21, 25–26. When they were at the gas station, Brooks allegedly grabbed Johnson's buttocks. *Id.* at ¶¶ 26, 28–29. These alleged facts imply that the relevant conduct arises, in some form, from an employment relationship. Does section 213.070.2 preempt claims that arise partially from an employment relationship, or does it preempt only claims that arise wholly from an employment relationship? And, relatedly, does section 213.070.2 preempt a claim when the facts giving rise to it occur away from the workplace but between a supervisor and subordinate? If so, under what circumstances?

Second, the alleged facts suggest that Brooks grabbed Johnson's buttocks and texted her an indecent photo for his own personal gratification. *See id.* at ¶¶ 14–15, 56 (explaining that Hertz employs people to, for example, process paperwork for people renting cars and ensure that those cars are ready for their renters—tasks that Brooks's actions did not further). Johnson

8

clearly alleges that she had a work relationship with Brooks, *id.* at ¶ 21, but she notably does not

allege that she had any other type of relationship with Brooks, *cf. id.* at ¶¶ 39–40 (alleging, in

contrast, that Johnson had a "friendship" with Driver, one of Johnson's supervisors at Hertz).

And the Court cannot reasonably construe any of the alleged facts as implying a relationship

between Brooks and Johnson that was divorced from their work relationship.  Does a claim

"aris[e] out of an employment relationship" when the conduct giving rise to it was for personal

gratification, not work purposes, if the plaintiff and individual defendant did not have a

relationship other than one through work?  And, relatedly, does the fact that the alleged

wrongdoer acted in his personal capacity render a claim outside of the scope of the

exclusive-remedy provision?  The Missouri legislature chose the term "arising out of" an

employment relationship, presumably meaning something broader than the time-worn "arising

within the course and scope of" such a relationship.  That choice has legal significance that the

statutory language doesn't address, and nor have the Missouri appellate courts done so.

Third, the facts and questions discussed above beget the question of from whose

"employment relationship" must a claim arise—the claimant's (e.g., Johnson's employment

relationship with Hertz), the alleged wrongdoer's (e.g., Brooks's employment relationship with

Hertz), or either?  *See, e.g.*, *Alst v. Mo. CVS Pharmacy, LLC*, Case No. 4:20-cv-00155-NKL,

2020 WL 2319882, at *2 (W.D. Mo. May 11, 2020) (remanding the case because the plaintiff

alleged that the conduct occurred "outside and beyond the scope of *her* employment" (emphasis

added)); *Matthews v. Syncreon.US, Inc.*, Case No. 20-CV-6140-SRB, 2020 WL 6538332, at *3

(W.D. Mo. Nov. 6, 2020) (remanding a case where the plaintiff alleged, in the alternative, that

the individual defendant was acting outside the scope of *his* employment relationship with the

employer defendant when he assaulted and battered the plaintiff); *Johnson*, 88 F.4th at 735–36

(affirming the denial of a remand motion because the plaintiff had pleaded that the person who conducted the relevant conduct "was 'acting within the course and scope of her employment," not the plaintiff's employment, with the employer defendant).

The Court could answer each of these lingering questions in favor of either Johnson or Hertz. But at this stage, the Court need not, and should not, definitively resolve these questions. *Filla*, 336 F.3d at 811. Instead, Missouri state courts should have the first opportunity to determine these important issues of state law. Thus, for purposes of the jurisdictional analysis, the Court resolves these lingering questions in favor of Johnson and in favor of remand. *Id.*

## IV. Conclusion

For the reasons explained above, the Court grants Johnson's [23] Motion to Remand. Pursuant to section 1447(c), the Court remands this case to the Circuit Court of the City of St. Louis, Missouri, and directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court. A separate order of remand accompanies this memorandum and order.

So ordered this 12th day of November 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE